O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTRELLA ORTIZ, | ) NO. CV 13-02809-MAN |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) AND ORDER |
| CAROLYN W. COLVIN, **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on April 29, 2013, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  On January 6, 2014, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation that same day, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability, DIB, and SSI on December 29, 2008. (Administrative Record ("A.R.") 136-39, 143-46.)  Plaintiff, who was born on October 31, 1980 (A.R. 30), claims to have been disabled since November 15, 2008, due to "[a]rthritis, disk problems, sciatic nerves, depression, anxiety, carpal tunnel, [and] headaches" (A.R. 159).  She has past relevant work ("PRW") experience as a telemarketer.  (A.R. 30.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration, plaintiff requested a hearing.  (A.R. 98, 104-17.)  On February 26, 2010, Administrative Law Judge Dale A. Garwal (the "ALJ"), dismissed plaintiff's request for a hearing based on her failure to file the request in a timely manner.  (A.R. 95-99.)  On June 25, 2010, after finding good cause for plaintiff's late filing, the Appeals Council vacated the ALJ's order and remanded the case for further proceedings.  (A.R. 102-03.)

On September 28, 2010,  plaintiff, who was represented by a non-attorney representative, appeared and testified at a hearing.  (A.R. 24, 71-90.)  Vocational expert Sharon Spaventa  ("VE") also testified.  (*Id.*)  On November 18, 2010, the ALJ denied plaintiff's claim (A.R. 24-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-5).  That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

In his November 18, 2010 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and had not engaged in substantial gainful activity since November 15, 2008, the alleged onset date of her disability. (A.R. 26.)  The ALJ determined that plaintiff has the severe impairments of: "cervical and lumbar strain/sprain; sciatica; hepatitis; migraines; obesity; borderline personality disorder; depression;

anxiety; [and] polysubstance dependence, in long time remission." (*Id.*)  The ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (A.R. 28.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can only "lift/carry 20 pounds occasionally and 10 pounds frequently; sit/stand for 6 hours out of an eight-hour workday; [engage in] occasional bending or stooping; and [she is] limited to simple, routine tasks."  (A.R. 29.)  In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record.  (A.R. 29-30.)

Based on plaintiff's age, education,[1] work experience, and RFC, as well as the testimony of the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform," including the jobs of marker and hotel housekeeper.  (A.R. 31.)  Thus, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since November 15, 2008, the alleged onset date, through November 18, 2010, the date of the ALJ's decision.  (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence

---

[1]    The ALJ determined that plaintiff "has at least a high school education and is able to communicate in English."  (A.R. 30.)

as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ erred in failing to properly consider:  (1) the medical evidence regarding her physical and mental impairments and limitations; (2) her subjective complaints; and

4

(3) lay witness statements.  (Joint Stipulation ("Joint Stip.") at 3.)

## I.   Remand Is Warranted, Because The ALJ Failed To Properly Assess Plaintiff's Mental RFC.

Plaintiff contends that the ALJ failed to properly consider the medical evidence with respect to both her physical and mental impairments and limitations.  (Joint Stip. at 6-16.)

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(d), 416.927(d).  In determining a claimant's RFC, an ALJ will consider all the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a), 416.945(a).  In so doing, the ALJ will consider all claimant's medically determinable impairments, including those that are not "'severe.'"  *Id.*

A.   The ALJ Failed To Properly Assess Plaintiff's Mental RFC.

Although the ALJ states in his decision that he credited the opinions of Dr. Glick, Dr. Donahue, and Dr. Stern in determining plaintiff's mental RFC, plaintiff argues that the ALJ's decision and hypothetical to the VE did not "accurately encompass [their] opinions."  (Joint Stip. at 6-13.)

///
///
///
///

1.   The ALJ Failed To Properly Consider The Opinion Of Treating Physician Dr. Howard Glick.

On August 3, 2010, Dr. Howard Glick, plaintiff's treating physician, completed a "Mental Interrogatories" form.  (A.R. 346-49.)    Dr. Glick diagnosed plaintiff with major depressive disorder, post-traumatic stress disorder, and polysubstance dependence, and he assessed plaintiff a GAF score of 52.[2] (A.R. 349.) Dr. Glick opined that plaintiff was moderately limited in 10 of 20 areas, including her ability to:  (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) maintain attention and concentration for extended periods; (5) perform within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) sustain an ordinary routine without special supervision unlimited; (7) complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (8) accept instructions and respond appropriately to criticism from supervisors; (9) respond appropriately to changes in the work setting; and (10) set realistic goals or make plans independent of others. (A.R. 347-78.)  He also opined that plaintiff would have difficulty working at a regular job on a sustained basis.  (A.R. 348.)

The ALJ purportedly gave Dr. Glick's medical opinion "significant weight based upon the long term treating relationship that he has had with [plaintiff] and [found that] it is in agreement with the consultative examination by Dr. Donohue." (A.R. 28.) The ALJ specifically observed that Dr. Glick found plaintiff to be "moderately limited in 10 of 20 areas of consideration," including "moderate difficulties" with respect to concentration, persistence, or pace ("CPP"). (A.R. 28.) In

---

[2]     A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.   DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000).  A GAF of 51–60 shows moderate symptoms, such as those that would affect speech or cause moderate difficulty in social, occupational, or school functioning. *Id.*

his RFC finding, however, the ALJ merely limited plaintiff to "simple, routine" tasks.  (A.R. 29.)  In addition, the ALJ omitted Dr. Glick's findings from the hypothetical posed to the VE.

Specifically, the ALJ's second hypothetical to the VE[3] included a limitation to "simple, routine tasks" and light work, and the VE's corresponding opinion -- *i.e.,* that the subject of the hypothetical could perform the jobs of marker and hotel/motel housekeeper -- is the basis for the ALJ's conclusion that plaintiff is not disabled due to the existence of jobs in significant numbers that she can perform.  (A.R. 31, 88.)  None of the ALJ's hypotheticals posed to the VE, however, mentioned any of the moderate mental functioning limitations found by Dr. Glick, including the moderate limitations in plaintiff's CPP.  Nor was the VE apprised of such moderate limitations through any other means.

An ALJ must include a limitation in a hypothetical posed to a vocational expert, as well as in an RFC determination, only if the record provides substantial evidence of such a limitation. *See, e.g.,* Flores v. Shalala. 49 F.3d 562, 570 (9th Cir. 1995); Dupree v. Astrue, CV 10-3146-JCG, 2011 WL 651886, at *5 (C.D. Cal. Feb. 10, 2011).  Given that the ALJ specifically stated that he accorded Dr. Glick's opinion "significant weight," there was substantial evidence of record that plaintiff is moderately limited in half of the mental functioning categories assessed by Dr. Glick, including in CPP.  Limiting a claimant to "simple, routine tasks" without explanation, as occurred here, fails to adequately account for plaintiff's moderate difficulties in CPP and constitutes error.

In Brink v. Comm'r Soc. Sec. Admin., 343 Fed. Appx. 211 (9th Cir. Aug. 18, 2009), the ALJ accepted the medical evidence indicating that the claimant had moderate difficulties in CPP, but the hypothetical to the VE mentioned only a limitation to "simple, repetitive work" without including any particular limitations as to CPP.  The Ninth Circuit held that this was reversible error.

---

[3]     The ALJ's first and third hypotheticals contained limitations to, respectively, medium work and sedentary work, as well as "simple, routine tasks."  (A.R. 87-88.)

1    In so doing, the Ninth Circuit flatly rejected the Commissioner's argument that the phrase "'simple,

2    repetitive work' encompasses difficulties with concentration, persistence or pace" and observed

3    that the light work the ALJ found claimant could perform -- which included "repetitive, assembly-

4    line type work" -- "might well require extensive focus or speed."   *Id.* at 212.   "The hypothetical

5    question to the vocational expert should have included not only the limitation to 'simple-repetitive

6    work,' but also [the claimant's] moderate limitations in concentration, persistence, or pace."   *Id.*

7    The Ninth Circuit reversed and remanded, because the ALJ's finding that the claimant could

8    perform light work was based on an incomplete hypothetical question and was not supported by

9    substantial evidence.   *Id.*; *see also* <u>Lubin v. Comm'r of Social Sec. Admin.</u>, 507 Fed. Appx. 709,

10   712 (9th Cir. Feb. 8, 2013) (when the ALJ found that the claimant had moderate limitations in

11   CPP, the ALJ erred in failing to include this limitation in the hypothetical posed to the VE; limiting

12   the claimant to "one to three step tasks" "did not capture the limitation in concentration,

13   persistence or pace found by the ALJ").

14

15         Numerous decisions in this district are in accord.  For example, *see* <u>Stevens v. Astrue</u>, CV

16   12-3629-RNB, 2013 WL 36110, at *1 (C.D. Cal. Jan. 30, 2013) (finding that the ALJ's decision was

17   not supported by substantial evidence when the ALJ stated he had given the "greatest weight"

18   to a physician's opinion, which included a finding of moderate limitations in CPP, yet the ALJ failed

19   to incorporate the moderate CPP limitations in his RFC finding and hypothetical to the VE and

20   included only a limitation of unskilled work with limited public contact); <u>Cruz v. Colvin</u>, No. SACV

21   12-1143-JPR, 2013 WL 4082714, at *9 & n.9 (C.D. Cal. Aug. 13, 2013) (the ALJ's finding that the

22   claimant was limited to "simple, repetitive tasks" did not accommodate, and conflicted with, a

23   state agency physician's findings of moderate limitations in CPP); <u>Smith v. Astrue</u>, EDCV 10-633-

24   PLA, 2011 WL 3962017, at *9 (C.D. Cal. Sept, 8, 2011) ("The phrase 'simple, repetitive work' does

25   not encompass difficulties with concentration, persistence, or pace where there is evidence of

26   such difficulties."); <u>Bentancourt v. Astrue</u>, EDCV 10-196-CW, 2010 WL 4916604, at *3–*4 (C.D.

27   Cal. Nov.27, 2010) (when the ALJ accepted medical evidence that the claimant was limited in

28   maintaining CPP but the hypothetical question to the VE included a restriction to "simple,

8

repetitive work" and failed to mention the claimant's CPP limitations, the ALJ's finding that the claimant is capable of medium exertional work was "based on an incomplete hypothetical question and unsupported by substantial evidence").[4]

Given the relevant authority cited above, the Commissioner's assertion that the ALJ "was not required to" include the moderate limitations in CPP assessed by Dr. Glick, and that the ALJ's inclusion of a limitation to "simple, routine tasks" adequately accounted for the moderate mental limitations found by Dr. Glick (Joint Stip. at 18), is unpersuasive.[5]  The ALJ plainly erred in failing to include in the hypotheticals posed to the VE the moderate limitations in CPP assessed by Dr. Glick.  Because the ALJ's hypothetical question to the VE did not reflect all of plaintiff's limitations, "the expert's testimony has no evidentiary value to support a finding that [plaintiff] can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).

Moreover, the ALJ erred in failing to explain *why* he did not include Dr. Glick's moderate limitation findings -- findings the ALJ said he accorded "significant weight" -- in the RFC determination. The ALJ, failed, without any explanation, to incorporate in his non-exertional RFC determination most of the 10 areas in which Dr. Glick found plaintiff to be moderately limited, including sustaining an ordinary routine, responding to criticisms from supervisors, responding to changes in the work setting, and making goals and plans independently of others.  Given that Dr.

---

[4]     *See also, e.g.,* O'Connor-Spinner v. Astrue, 627 F.3d 614, 619-620 (7th Cir. 2010) (finding that employing terms like "unskilled work" or "simple, repetitive tasks," without explanation, fails to account for CPP limitations); Gill v. Colvin, CV-13-01573-PHX-BSB, 2014 WL 1950094, at *6 (D. Ariz. May 15, 2014) (an RFC that limited the claimant to "simple, unskilled tasks" was "incomplete" when the ALJ had accepted and assigned "great weight" to a physician's opinion that the claimant has moderate limitations in CPP).

[5]     The Commissioner's reliance on Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007), is misplaced.  The issue in Hoopai was whether the ALJ erred at step five by relying on the Grids rather than adducing evidence from a vocational expert. More specifically, the question was whether the ALJ erred in finding that the claimant's depression was not sufficiently severe to preclude reliance on the Grids.  There was no issue, as here, regarding whether the ALJ erred in failing to include moderate mental limitations in the claimant's RFC and/or in the hypothetical posed to the vocational expert.

1  Glick's findings were substantially consistent with the medical evidence of record, particularly as

2  to plaintiff's moderate CPP,[6] the ALJ could not ignore or reject such findings without giving clear

3  and convincing reasons for doing so.  *See* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see*

4  *also* Betts v. Colvin, 531 Fed. Appx. 799, 800 (9th Cir. June 24, 2013) (reversing when the ALJ --

5  who stated that he gave the "greatest weight" to an examining physician's opinion, which included

6  persistence and pace limitations -- failed to include such mental limitations in his RFC finding and

7  provided no reasons for disregarding them); Stevens, 2013 WL 361100, at *1 (when the ALJ gave

8  "greatest weight" to a physician's opinion that included moderate to marked CPP limitations, the

9  ALJ's failure to provide the requisite reasons for not including such CPP limitations in his RFC

10  determination and hypothetical to the VE was error).

11

12        The ALJ's error was not harmless.  The VE's testimony, upon which the ALJ relied to make

13  his disability determination, was based on an RFC that did not include all of plaintiff's limitations.

14  Thus, it is not clear from the record that the marker and hotel housekeeper jobs identified by the

15  VE and which the ALJ found plaintiff could perform are, in fact, jobs that could be performed by

16  a person with all of plaintiff's limitations, including her moderate mental functioning limitations.

17  Accordingly, the ALJ's failure to proffer any reason for not including the moderate mental

18  limitations assessed by Dr. Glick and/or to explain their rejection constitutes reversible error.  On

19  remand, the ALJ must properly consider and incorporate Dr. Glick's opinion or provide clear and

20  convincing reasons for rejecting it.

21  ///

22  ///

23  ///

24  ///

25

26  _____

27        [6]      As the ALJ noted:  the state agency physician, Dr. Stern, also found that plaintiff is moderately limited in CPP (A.R. 27); and Dr. Glick's opinion was entitled to significant weight,

28  because he was a long term treating physician and his opinion was "in agreement" with the findings of the consultative psychologist, Dr. Margaret Donahue (A.R. 27-28).

2.     The ALJ Failed To Properly Consider The Opinion Of
Consultative Examiner Dr. Margaret Donohue.

On February 14, 2009, consultative psychologist Dr. Margaret Donohue conducted a complete mental evaluation of plaintiff.  (A.R. 264-67.)  After reviewing plaintiff's medical records and history and performing a mental status examination of plaintiff, Dr. Donohue diagnosed plaintiff with:  depression, not otherwise specified; anxiety, not otherwise specified; and a history of trauma.  (A.R. 267.)  She also assessed plaintiff with a GAF score of 50.[7]  (A.R. 264-67.)  Dr. Donohue noted that plaintiff was pleasant and cooperative and should be able to get along adequately with others.  (*Id.*)  However, Dr. Donohue further noted that plaintiff:  would have some difficulty with the general public and is likely to easily feel overwhelmed; is considered competent to manage funds, but needs to use a calculator; and can do simple tasks but would have difficulty with anything detailed or complicated as a result of concentration problems.  (*Id.*)

Plaintiff argues that the ALJ erred by failing to incorporate Dr. Donohue's assessment that plaintiff would have some difficulty with the general public and is likely to feel overwhelmed. (Joint Stip. at 8.)  As he did with the opinion of Dr. Glick, although the ALJ noted that he credited the opinion of Dr. Donohue in assessing plaintiff's non-exertional RFC, it appears that the ALJ inexplicably incorporated only some of those limitations found by the consultative psychologist, *to wit*, through the ALJ's cursory limitation to "simple, routine" tasks.  The ALJ's failure to proffer any reason for failing to incorporate and/or to explain the rejection of a significant aspect of Dr. Donohue's opinion constitutes error.  Accordingly, on remand, the ALJ must properly consider and incorporate Dr. Donohue's opinion or provide the requisite reasons -- whether clear and

---

[7]     A GAF rating of 41–50 reflects "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM–IV–TR, at 34.

1   convincing or specific and legitimate -- for rejecting it.[8]

2

3        B.    The ALJ Properly Assessed Plaintiff's Physical RFC.

4

5       Plaintiff argues that the ALJ failed to properly assess her physical RFC, because he did not

6   properly consider either the opinion of consultative examiner Dr. Simmonds or plaintiff's

7   impairments of migraines, hepatitis, and carpal tunnel syndrome, as well as the impact of her

8   obesity. (Joint Stip. at 13-16.)

9

10          1.    The ALJ Properly Considered The Opinion Of Consultative

11                Examiner Dr. John Simmonds.

12

13      On February 13, 2009, consultative examiner Dr. John Simmonds conducted an orthopaedic

14  examination of plaintiff. (A.R. 259-63.)   After reviewing plaintiff's medical records, including

15  "MRIs [which] were consistent with mild degenerative disc disease of the lumbosacral spine" and

16  physically examining plaintiff, Dr. Simmonds opined that plaintiff could: push, pull, lift, and carry

17  50 pounds occasionally and 25 pounds frequently; walk and stand for six hours with no assistive

18  device; frequently bend, stoop, crouch, kneel, crawl, and walk on uneven terrain and climb

19

20  _____

21        [8]    In a confusing argument, plaintiff complains that the ALJ failed to fully credit the opinion of the state agency reviewing physician, Dr. Thomas D. Stern. (Joint Stip. at 7.)  As

22  plaintiff notes, the ALJ failed to consider Dr. Stern's opinion that she was "not significantly limited" with respect to sustained concentration and persistence. (A.R. 280.)  However, earlier in the

23  *same* report, Dr. Stern found that plaintiff *does* have a moderate functional limitation with respect to maintaining CPP (A.R. 276), and the ALJ acknowledged this finding (A.R. 27).  Given this

24  internal inconsistency within Dr. Sterns's report, plaintiff has not shown any reversible error with respect to the ALJ's treatment of Dr. Stern's opinion.

25        Plaintiff also argues within this claim that, at step 3, the ALJ's "paragraph B" findings

26  are inconsistent with the opinions of Dr. Glick and Dr. Donohue, and that an RFC finding which is more "severe" than limiting plaintiff to "simple, routine tasks" is warranted. Given the Court's

27  foregoing finding of reversible error and the need to remand for a proper consideration of the opinions of Dr. Glick and Dr. Donohue, the Court need not address this contention separately,

28  because the ALJ's conclusions may change regarding his step 3 analysis as well as his mental RFC assessment of plaintiff.

1  ladders; and work at heights on a frequent basis.  Dr. Simmonds also found that plaintiff would

2  have neither sitting nor fine and gross manipulative movement restrictions.  (*See* A.R. 259-60,

3  262.)

4

5       Plaintiff argues that the ALJ's physical RFC determination, *i.e.*, light work with occasional

6  bending or stooping, is not supported by substantial evidence, because there are no medical

7  opinion or evidence that supports the ALJ's RFC physical limitations.   (Joint Stip. at 13-14.)

8  Although no medical opinion wholly reflects the ALJ's physical RFC determination, Dr. Simmonds,

9  whose opinion is uncontradicted and was relied upon by the ALJ, opined that plaintiff could do

10  medium work without any restrictions.  The ALJ nevertheless assessed plaintiff with a more

11  restrictive RFC -- limiting her to light work with occasional bending or stooping -- than that

12  assessed by Dr. Simmonds.

13

14       Plaintiff further argues that the ALJ's RFC determination fails to incorporate a November

15  17, 2009 lumbar spine MRI (taken 9 months after Dr. Simmonds examined plaintiff), which

16  reflected L5-S1 "desiccative disc changes with a left lateral 'annular tear' and a 3-4mm left lateral

17  disc protrusion."  (Joint Stip. at 14.)   However, it appears that the ALJ was aware of the

18  November 2009 MRI results (A.R. 27), and as a result, assessed plaintiff with a more restrictive

19  RFC that than assessed by Dr. Simmonds.

20

21       There is no apparent reversible error in the ALJ's assignment of a more restrictive physical

22  restriction (light work) than that found by Dr. Simmonds.

23

24            2.    The ALJ Properly Considered Plaintiff's Obesity.

25

26       The ALJ found, at step 2, that plaintiff has the severe impairment of obesity.  (A.R. 26.)

27  At the commencement of his step 4 analysis, the ALJ noted that he took plaintiff's obesity into

28  consideration in assessing her RFC.  (A.R. 28.)  As plaintiff observes, however, the ALJ's decision

1  does not contain any further analysis of the impact of plaintiff's obesity on her ability to work.

2  Thus, plaintiff argues the ALJ failed to adequately determine the effects of plaintiff's obesity in

3  combination with her other impairments and the resulting effect on her ability to work. (Joint Stip.

4  at 14-15.)

5

6  Here, the record shows that, although plaintiff never raised the issue of her weight, the ALJ

7  nonetheless examined the record, acknowledged her obesity, and determined that her obesity was

8  a severe impairment at step 2. (*See i.e.,* A.R. 75-78, 80, 159, 211, 222.) The record further

9  indicates that, although several of plaintiff's physicians noted her obesity, none opined that

10 plaintiff's obesity contributed to her limitations.[9] (*See* A.R. 314, 316, 318, 319, 356, 359, 361,

11 363, 367, 375, 380.) Plaintiff also does not cite any evidence of a physician or other medical

12 provider indicating that plaintiff's obesity exacerbated her impairments or resulted in any

13 functional limitation. (*See* Joint Stip. at 14-15.)

14

15 Because plaintiff did not provide any evidence of functional limitations related directly or

16 indirectly to her obesity that would have impacted the ALJ's analysis, the ALJ was not required to

17 consider the effect of plaintiff's obesity in combination with her other impairments. *See* Garcia

18 v. Comm'r of Soc. Sec. Admin., 498 F. App'x 710, 712 (9th Cir. 2012); Burton v. Barnhart, 310 F.

19 App'x 960 n.1 (9th Cir. 2009) (finding the ALJ did not err in failing to consider adequately

20 claimant's obesity when claimant does not specify how his obesity limits his functional capacity

21 or how it exacerbates his currently existing condition). Indeed, Dr. Simmonds, the consultative

22

23        [9]    Although the ALJ also found that plaintiff had a severe impairment of "cervical and
24  lumbar strain/sprain," plaintiff has presented no medical evidence or testimony that her weight
    caused or exacerbated her complaints of back pain. Plaintiff's medical records do not indicate that
25  her weight had any effect on her back pain or her ability to work, and there is no documented
    recommendation for weight loss to ameliorate her back pain. Rather, it appears that plaintiff was
26  being treated primarily with pain medication and some physical therapy for her back pain. (A.R.
    375-80, 385, 391, 396, 398-99, 400-02, 404-05); *see* Burch, 400 F.3d at 683–84 (finding the ALJ's
27  failure to consider obesity was not reversible error, where there was no evidence that claimant's
    obesity limited her functioning, and the only evidence related to obesity was a doctor's
28  observation of weight gain, notation of obesity, and recommendation that claimant participate in
    a weight loss program).

1   physicians to whose opinion the ALJ properly gave great weight in assessing plaintiff's RFC, was

2   cognizant of her height and weight, as well as her other claimed impairments including her lower

3   back pain, and nonetheless concluded that she retained the functional capacity to perform work

4   at a medium exertional level with no restrictions.  (A.R. 259-62.)

5

6        Based on the record before the Court, the ALJ adequately considered plaintiff's obesity in

7   his RFC determination by finding, at step 2, that plaintiff's obesity is severe and relying on Dr.

8   Simmonds findings, who accounted for plaintiff's weight in his opinion.  *See* Burch, 400 F.3d at

9   684; Garcia, 498 F. App'x at 712 (ALJ did not fail to consider obesity when he recognized

10  claimant's obesity as severe and relied on functional limits suggested by doctors who recognized

11  it).   Plaintiff has not set forth, and there is no evidence in the record of, any functional

12  limitation(s) resulting from her obesity which the ALJ failed to consider.  *See* Burch, 400 F.3d at

13  684. Accordingly, the ALJ did not commit reversible error in his consideration of plaintiff's obesity.

14

15             3.    The ALJ Properly Considered Plaintiff's Headaches And

16                   Hepatitis.

17

18        Although the ALJ found plaintiff's headaches and hepatitis to be severe impairments,

19  plaintiff argues that the ALJ's RFC findings do not reflect any functional limitations resulting from

20  such limitations. (Joint Stip. at 15.)   Notably, the Ninth Circuit has rejected the argument that

21  a finding of a severe mental impairment at step 2 automatically corresponds to limitations on a

22  claimant's ability to perform work activities.  Bray v. Comm'r of SSA, 554 F.3d 1219, 1228–29 (9th

23  Cir. 2009); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of symptoms

24  or impairment is insufficient proof of disability).

25

26        Moreover, plaintiff did not present medical evidence demonstrating a functional impact from

27  her headaches and hepatitis, evidence that would call into question the ALJ's decision to discount

28  plaintiff's headaches and hepatitis as giving rise to a functional limitation.  *See* Houghton v.

1  Comm'r of Soc. Sec. Admin., 493 Fed. App'x. 843, 845 (9th Cir. 2012) (rejecting claim that ALJ
2  failed to consider evidence of claimant's heart condition, sleep apnea, right heel injury, diabetes
3  with neuropathy in the right leg, or obesity where claimant had "not shown that the ALJ
4  discounted significant probative evidence of functional limitations or work-related restrictions"
5  arising from the conditions); Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir.
6  2003) (holding that the ALJ need only discuss evidence that is significant and probative); Vincent
7  ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (same).

8

9       In any event, Dr. Simmonds, to whose opinion the ALJ properly gave great weight in
10  assessing plaintiff's RFC, was aware of plaintiff's history of migraine headaches.  (A.R. 259, 262.)
11  Thus, the ALJ adequately considered plaintiff's headaches in his assessment of her RFC.[10]

12

13              4.      The ALJ's Consideration Of Plaintiff's Carpal Tunnel Syndrome,
14                      While Erroneous, Was Harmless.

15

16       Plaintiff argues that although evidence in the record establishes she suffered from carpal
17  tunnel syndrome, the ALJ failed to incorporate manipulative limitations in his RFC determination.
18  (Joint Stip. at 15-16.)   Unlike her obesity, hepatitis, and headaches, plaintiff's carpal tunnel
19  syndrome was not found to be a severe impairment by the ALJ.  (A.R. 20.)  However, in her
20  disability application, plaintiff claimed she was unable to work due to carpel tunnel syndrome.
21  (A.R. 159.)   Plaintiff's medical records confirm that plaintiff did suffer from carpal tunnel
22  syndrome.  (A.R. 379, 391, 394, 399, 401.)   Thus, the ALJ's failure to discuss plaintiff's carpal
23  tunnel syndrome in his decision constitutes error. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)
24  (in assessing RFC, ALJ will consider "all of your medically determinable impairments of which we

25

26  _____

27      [10]      The Court does not find, aside from the ALJ's determination that plaintiff had a
    severe impairment of hepatitis, any indication in plaintiff's medical record that she suffered from
28  hepatitis.  Plaintiff also does not cite to the record indicating that she suffered from hepatitis.
    (See Joint Stip. at 15.)

16

1  are aware, including your medically determinable impairments that are not 'severe' ").

2

3  The Court finds that this error is harmless for several reasons, however.  First, although
4  there is evidence that plaintiff had carpal tunnel syndrome, all references to it, with the exception
5  of one on September 3, 2009, were made in 2005, which pre-dates plaintiff's disability onset date.
6  (See A.R. at 379, 391, 394, 399, 401); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155,
7  1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited
8  relevance.").  Second, and most significantly, there is no evidence that any treating or examining
9  physicians opined that plaintiff's carpal tunnel syndrome imposed any functional limitations on her
10  ability to work.  Finally, Dr. Simmonds, in assessing plaintiff's physical RFC, noted that plaintiff's
11  "motor examination reveals essentially normal strength by manual muscle testing in all major
12  muscle groups of the upper and lower extremities, graded at 5/5"; as a result, Dr. Simmonds
13  determined that plaintiff could perform fine and gross manipulative movements without
14  restrictions.  (A.R. 262.)  Accordingly, the ALJ's failure to address plaintiff's carpal tunnel
15  syndrome constitutes harmless error and does not warrant reversal.

16

17  *     *     *     *     *

18

19  In sum, the ALJ's physical RFC determination was supported by substantial evidence.

20

21  C.     Until The ALJ Has Properly Considered The Medical Opinion Evidence, The
22         Court Cannot Assess The Adequacy Of The Hypothetical Posed To The VE.

23

24  Plaintiff also contends within this claim that the ALJ failed to pose a proper hypothetical to
25  the VE, because the hypothetical posed did not include all of plaintiff's impairments.  (Joint Stip.
26  at 19.)

27

28  In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the

17

1   claimant's limitations.  Embrey v. Bowen, 849 F.2d 418, 422–24 (9th Cir. 1988).  For a vocational

2   expert's testimony to constitute substantial evidence, the hypothetical question posed must

3   "consider all of the claimant's limitations."  Andrews, 53 F.3d at 1044 (holding that hypothetical

4   questions that do not include all of the plaintiff's limitations are insufficient and warrant remand).

5

6        Here, the hypothetical may be incomplete to the extent it does not reflect appropriately,

7   in whole or in part, the medical opinion evidence of record with respect to plaintiff's mental

8   limitations.  On remand, the ALJ must either properly reject the opinions of Dr. Glick and Dr.

9   Donohue in accordance with the appropriate legal standards or incorporate all plaintiff's mental

10  functioning limitations that are not properly rejected into the hypothetical posed to the VE.

11

12  **II.    On Remand, The ALJ Should Also Revisit His Assessment Of Plaintiff's Credibility.**

13

14       Once a disability claimant produces objective medical evidence of an underlying impairment

15  that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective

16  testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d

17  885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also 20 C.F.R. §§

18  404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an

19  ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find

20  an applicant not credible by making specific findings as to credibility and stating clear and

21  convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing

22  a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies

23  either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the

24  claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

25  third parties concerning the nature, severity, and effect of the symptoms of which the claimant

26  complains.  See Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir.2002).

27

28       Here, the ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s

18

1   medically determinable impairments could reasonably be expected to cause the alleged

2   symptoms."  (A.R. 30.)   Further, the ALJ cited no evidence of malingering by plaintiff.

3   Nonetheless, the ALJ concluded that plaintiff's "statements concerning the intensity, persistence

4   and limiting effects of these symptoms are not credible" to the extent they vary from the ALJ's

5   own RFC assessment.  (*Id.*)  Accordingly, the ALJ's reasons for finding that plaintiff was not

6   credible with respect to her subjective symptom and pain testimony must be "clear and

7   convincing."

8

9       As acknowledged by the ALJ, plaintiff testified at the hearing that she is unable to work due

10   to "migraine headaches, back and neck pain, depression, anxiety, bell palsy and ongoing

11   treatment for drug addiction."  (A.R. 29, 75-80.)   Plaintiff also stated that she has a problem

12   getting along with others and likes to be alone.  (A.R. 79.)

13

14       The ALJ found plaintiff to be not entirely credible, because:  (1) the objective medical

15   evidence did not support the extent of plaintiff's allegations of pain; and (2) plaintiff's pain and

16   mental health concerns are not so severe and frequent as to prevent substantial gainful activity.[11]

17   (A.R. 30.)

18

19       As this case is being remanded for the ALJ to consider the opinions of Dr. Glick and

20

21

22       [11]     The ALJ does not appear to have considered inconsistencies in plaintiff's daily
    activities and conservative pain treatment as reasons for finding her not credible.  (*See* A.R. 30.)
23   While the Commissioner now offers these as reasons to explain the ALJ's adverse credibility
    finding, the Court cannot entertain these post hoc rationalizations. *See, e.g.,* Orn, 495 F.3d at 630
24   ("We review only the reasons provided by the ALJ in the disability determination and may not
    affirm on a ground upon which he did not rely").  The Court also finds the ALJ's second reason
25   for rejecting plaintiff's subjective pain testimony to be unclear.  It is unclear whether, in stating
    that plaintiff's pain and mental health concerns are not so severe and frequent as to prevent
26   substantial gainful activity, the ALJ reached this conclusion because plaintiff's medical records fail
    to show the severity and frequency of her medical conditions (as plaintiff argues) or because
27   plaintiff was treated conservatively (as defendant argues).  Thus, on remand, when reassessing
    plaintiff's credibility, the ALJ must provide clear and convincing reasons  so that a reviewing court
28   may know the basis for the ALJ's decision and have the ability to assess the propriety of that
    decision.

1 Donohue, which may support some of plaintiff's complaints and alleged limitations that the ALJ

2 deemed to be unsupported by the objective medical evidence, the Court does not reach plaintiff's

3 claim that the ALJ erred in finding plaintiff to be not credible.  Rather, the Court directs that

4 plaintiff's credibility be reassessed on remand.

5

6 **III.    The ALJ Erred In Rejecting The Lay Witness Statements Of Juanita Martinez.**

7

8 "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

9 concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009)

10 (quoting Stout, 454 F.3d at 1053) (internal quotation marks omitted).  "[F]riends and family

11 members in a position to observe a claimant's symptoms and daily activities are competent to

12 testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993);

13 20 C.F.R. §§ 404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources to show

14 the severity of your impairment(s). . . .  Other sources include, but are not limited to . . . spouses,

15 parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy.").  Such

16 testimony is competent evidence and "cannot be disregarded without comment." Bruce, 557 F.3d

17 at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks

18 omitted).  When rejecting the testimony of a lay witness, an ALJ must give specific reasons that

19 are germane to that witness. *Id.*

20

21 Here, the ALJ rejected the lay witness statements of plaintiff's aunt, Juanita Martinez,

22 because the "opinion and statements of [plaintiff's] treating psychiatrist and consultative

23 examiners are more objective and less likely to be influenced by sympathy for the [plaintiff] or

24 other emotional factors." (A.R. 30.)  It thus appears that the ALJ rejected Martinez's statements

25 solely because she allegedly was biased as a family member.  However, an ALJ may not presume

26 bias on the part of a claimant's family members simply because they are related to the claimant.

27 *See* Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) ("[t]he fact that a lay witness is a family

28 member cannot be a ground for rejecting his or her testimony"); *see also* Regennitter v. Comm'r

1   of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999) (ALJ improperly rejected lay witness

2   testimony of the plaintiff's mother on the basis of presumed bias).

3

4        As this case is being remanded for proper consideration of plaintiff's mental limitation, and

5   in turn, plaintiff's credibility, the ALJ must also reconsider the testimony and statements of

6   Martinez regarding her observations of plaintiff's subjective symptoms.  The ALJ must provide, if

7   they exist, appropriate reasons for rejecting the observations of Martinez regarding plaintiff's

8   limitations.

9

10  **IV.    Remand Is Required.**

11

12       The decision whether to remand for further proceedings or order an immediate award of

13  benefits is within the district court's discretion.  Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.

14  2000).  Where no useful purpose would be served by further administrative proceedings, or where

15  the record has been fully developed, it is appropriate to exercise this discretion to direct an

16  immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further

17  proceedings turns upon the likely utility of such proceedings.").  However, where there are

18  outstanding issues that must be resolved before a determination of disability can be made, and

19  it is not clear from the record that the ALJ would be required to find the claimant disabled if all

20  the evidence were properly evaluated, remand is appropriate.  Id. at 1179-81.

21

22       Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-

23  mentioned deficiencies and errors.  On remand, the ALJ must credit Dr. Glick's and Dr. Donohue's

24  opinions or provide appropriate reasons supported by substantial evidence for rejecting those

25  opinions.  Once these issues are properly addressed and clarified, the ALJ can determine what

26  impact, if any, this has on his assessment of both plaintiff's and Ms. Martinez's statements

27  regarding plaintiff's limitations.  The ALJ may also need to reassess plaintiff's RFC, in which case

28  additional testimony from a VE likely will be needed to determine what work, if any, plaintiff can

1  perform.

2

3  **CONCLUSION**

4

5      Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the

6  Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with

7  this Memorandum Opinion and Order.

8

9      IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

10  Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

11

12  **LET JUDGMENT BE ENTERED ACCORDINGLY**.

13

14  DATED: August 14, 2014

15                                           *Margaret A. Nagle*
                                      _____
16                                        MARGARET A. NAGLE
                                      UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21

22

23

24

25

26

27

28

                                    22